IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-30329
Summary Calendar

_____


SONYA JONES; KIM BROWN, THOMAS BENNETT,
TROY LOCKLEAR, ETHEL HUDSON, ET AL.,

                                        Plaintiffs-Appellants,

versus

DOW CHEMICAL COMPANY, THE PEOPLE'S
WATER SERVICE COMPANY OF LOUISIANA, INC.

                                        Defendants-Appellees.
----------------------------------

MURRAY CHASE; RUDY BALL; KEVIN BOYD; LEON BURB;,

                                        Plaintiff-Appellants,

versus

DOW CHEMICAL COMPANY,

                                        Defendants-Appellees.


_____

Appeals from the United States District Court
for the Middle District of Louisiana
(95-CV-453)
_____

February 3, 1997

Before GARWOOD, JOLLY, and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

_____

[*]   Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Toxic tort plaintiffs appeal the district court's grant of summary judgment. We affirm.

## Facts and Proceedings Below

On the morning of December 19, 1993, a quantity of perchloroethylene, assertedly a potentially dangerous chemical, was accidentally spilled at the Plaquemine plant of defendant-appellee Dow Chemical Company (Dow). Dow was able to contain most of the spill, but despite its efforts approximately 74.1 gallons (1001 pounds) of the chemical escaped into the Mississippi River. Upon learning of the spill Dow began containment efforts and contacted the appropriate governmental authorities. In addition, pursuant to prearranged procedures downriver water intake systems, including the Bayou Lafourche Fresh Water District (BLFWD), were notified of the spill.[1] The BLFWD shut down its pumps at around 6:30 p.m. on the 19th, shortly after receiving its notification.

Defendant-appellee Peoples' Water Service Company of Louisiana, Inc. (Peoples'), which provides the water supply for the people of Donaldsonville, is the first water intake on Bayou Lafourche downstream from the BLFWD pumping station at the headwaters of the bayou. Peoples' does not draw its water directly from the Mississippi River, and the only way water from the river makes its way into the bayou is when it is pumped there by the

---

[1] The BLFWD pumping station at Donaldsonville pumps water from the Mississippi River into Bayou Lafourche, which has no other connection to the river.

BLFWD pumping station. The pumping station is about thirty-five miles down river from the site of the spill.

On January 25, 1994, Sonya Jones and other plaintiffs (Jones plaintiffs) filed suit against Dow and Peoples' in state court. Jones plaintiffs sought recovery for personal injuries, emotional distress, and inconvenience due to a cutoff of drinking water occasioned by the spill; in addition, Jones plaintiffs sought punitive damages under LSA-C.C. art. 2315.3. A similar lawsuit was filed by Murray Chase and other plaintiffs (Chase plaintiffs) on December 19, 1995.[2] Both of these cases were removed to federal district court and ultimately consolidated in the Middle District of Louisiana.

Discovery ensued, and Dow filed motions for summary judgment against both Jones plaintiffs and Chase plaintiffs.[3] In support of these motions Dow produced affidavits asserting that water samples taken after the spill revealed that the maximum concentration of perchloroethylene in the river at any location downstream of the spill was less than 0.5 part-per-billion, far less than the safe drinking water standard for perchloroethylene of five parts-per-billion established by the Environmental Protection Agency.[4]

---

[2] Jones plaintiffs and Chase plaintiffs are represented by the same attorney.

[3] This litigation has not been certified as a class action under Fed. R. Civ. Pro. 23.

[4] This standard is the level considered safe by the EPA for lifetime exposure in drinking water.

Similar testing in Bayou Lafourche did not indicate the presence of any amount of the chemical.  In addition to this information and related summary judgment evidence that the local population faced no risk of harm from this spill, Dow produced newspaper reports and transcripts of television broadcasts from local news agencies concerning the spill, none of which indicated any threat of danger to the population downriver from the Dow facility.  Dow and Peoples' also submitted summary judgment evidence that neither Peoples' nor the Assumption Parish Waterworks District No. 1 (which served Napoleonville, some fourteen miles downstream of Donaldsonville on Bayou Lafourche) had cut off water service.

Jones plaintiffs and Chase plaintiffs filed six affidavits into the record, each made by a named plaintiff.  These affidavits related a fairly identical story, *i.e.*, that the residents of Donaldsonville, after learning about the spill through the media, had stopped using tap water and begun purchasing bottled water due to a fear of drinking contaminated water.  All of the affidavits save that of Jones herself suggested that water service in Donaldsonville had continued uninterrupted after the spill; Jones, however, averred that "[h]er water was . . . shut off as a result of the spill."  Affidavits, pressure charts, and other documentation filed by Dow and Peoples' contradicted Jones' vague assertion that the water supply was interrupted at any time due to the spill.

4

In response to Dow's proffered summary judgment evidence regarding the actual risk of harm posed by the spill, Jones plaintiffs stipulated to a dismissal of most of their claims. This stipulation was incorporated into an order of the district court granting Dow partial summary judgment on all of Jones plaintiffs' claims except those "for inconvenience associated with interrupted water service and . . . punitive or exemplary damages." Chase plaintiffs opted not to file such a stipulation. None of the plaintiffs questions the stipulation on this appeal. In response to Dow's motion for summary judgment, Chase plaintiffs conceded that Dow was entitled to summary judgment on the issues of physical harm (and they do not contend otherwise on appeal). Chase plaintiffs, however, continued to assert the viability of their claims for inconvenience, fear of harm from contamination, and punitive damages.

The district court heard arguments on the two motions for summary judgment on February 14, 1996. After hearing oral argument, the district court indicated on the record that, due to the paucity of the plaintiffs' evidentiary proffer, he was going to grant the defendants' motions *in toto* and dismiss all remaining claims. On February 23, 1996, the district court entered a judgment dismissing the plaintiffs' remaining claims. Plaintiffs timely appeal the district court's judgment.

**Discussion**

"[T]he party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original) (citations omitted) (internal quotation marks omitted). Once the movant has met this burden, the burden shifts to the nonmovant to go beyond the pleadings and designate, by competent summary judgment evidence, specific facts which demonstrate genuine triable issues. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553-2554 (1986). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations omitted) (internal quotation marks omitted). In reviewing a district court's grant of summary judgment we consider the record *de novo*. *Wittorf v. Shell Oil Co.*, 37 F.3d 1151, 1154 (5th Cir. 1994). The district court's application of Louisiana law, which governs this case, is also subject to *de novo* review. *Salve Regina College v. Russell*, 111 S.Ct. 1217 (1991).

Plaintiffs challenge the district court's ruling that they have not presented any evidence which would support an award of punitive damages. Civil Code article 2315.3 provides for the award of exemplary damages "if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for

6

public safety." Plaintiffs have completely failed to point to any fact or circumstance indicating that Dow acted with "wanton or reckless disregard for public safety." On the contrary, the record indicates that quite the opposite is true. *Compare Landry v. Uniroyal Chemical Co., Inc.*, 94-1274 (La.App. 1 Cir. 3/3/95), 653 So.2d 1199, *writ denied*, 95-1381 (La. 9/15/95), 660 So.2d 461; *Lasha v. Olin Corp.*, 91-459 (La.App.3 Cir. 3/2/94), 634 So.2d 1354; *Fuselier v. Amoco Production Co.*, 607 So.2d 1044 (La.App.3 Cir. 1992). For this reason, plaintiffs' argument fails.

Plaintiffs next argue that once the district court dismissed the punitive damages claim it should have then remanded the remaining state law claims to state court. Plaintiffs, correctly, do not contend that original removal jurisdiction was lacking; rather, they argue that once the punitive damages claim was removed from the damages calculation their combined claims totaled less than the jurisdictional amount, rendering the district court's continued exercise of diversity jurisdiction nugatory. This contention is specious. Once the punitive damages claim was dismissed, the district court enjoyed supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367. The district court's decision to retain and adjudicate these claims was fully within his discretion. *Eastus v. Blue Bell Creameries*, 97 F.3d 100 (5th Cir. 1996); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942 (5th Cir. 1995); *John G. and Marie Stella*

7

*Kennedy Memorial Foundation v. Mauro*, 21 F.3d 667 (5th Cir. 1994).

Plaintiffs claim that a genuine issue of material fact exists regarding whether Peoples' cut off the area water supply after the spill. Of the six affidavits submitted by plaintiffs, only that of Jones suggests that this occurred. Even Jones' affidavit, however, does not expressly relate *who* shut off her water (or where it was shut off), nor does she aver specific facts demonstrating the alleged causal nexus between the spill and any cessation of water service. A plenary review of the affidavits submitted by both plaintiffs and defendants and Peoples' documentary evidence showing its continuing operation after the spill leads us to the conclusion that the plaintiffs have presented at most only a "scintilla" of evidence that Donaldsonville's (or Napoleonville's) water service was ever interrupted, much less that it was interrupted due to the spill. Counsel for Jones plaintiffs admitted to the court at the summary judgment hearing "I have to concede that we cannot prove that the water was shut off at Peoples'." Jones' conclusory affidavit averment—which is essentially contradicted by her prior deposition testimony, without any explanation for the contradiction—is insufficient to overcome Dow's motion on this issue.

Plaintiffs further argue that even if, as the evidence indicates, the plaintiffs opted to cut off their own water service, they are nonetheless entitled to general damages for the resulting

8

inconvenience. We conclude that this claim is barred because under the facts of this case Louisiana law affords these plaintiffs no remedy for their alleged injuries.

Under Louisiana law, a plaintiff can recover on a claim of inconvenience only if the inconvenience rises to the level of being excessive. *Irby v. Panama Ice Co*., 184 La. 1082, 168 So. 306, 309 (1936) (inconvenience must be "excessive and unreasonable"). *See also Hero Lands Co. v. Texaco, Inc*., 310 So.2d 93 (La. 1975). To determine whether an inconvenience is excessive, a court is to employ an objective standard which measures whether the inconvenience would produce actual discomfort and annoyance to an average person of ordinary sensibilities. *See McGee v. Yazoo & Miss. R.R.,* 106 La. 121, 19 So.2d 21, 25 (1944); *Woods v. Tuberville*, 168 So.2d 915 (La. App. 2d Cir. 1964). If the inconvenience is not excessive under the circumstances, there is no relief; it is a mere inconvenience. *See Constance v. State of Louisiana,* 626 So.2d 1151 (La. 1993), *cert. denied*, 114 S.Ct. 2706 (1994); *State Through DOTD v. Chambers Inv. Co.,* 595 So.2d 598 (La. 1992).

Applying the above objective standard to the facts and circumstances of the present case, we conclude that the only inconvenience to the plaintiffs shown by the summary judgment evidence does not rise to the level of excessiveness. There was no perchloroethylene detectable in Bayou Lafourche (the source of the

plaintiffs' water) and the level of perchloroethylene in the Mississippi River was far less than the safe drinking water standard for perchloroethylene. Local media reported that there was no risk of harm from the spill to the downriver population, and water service was never cut off.

Finally, we turn to plaintiffs' claims for reimbursement of the price of bottled water allegedly purchased due to fear arising from the spill. This claim seeks compensation for an economic loss, yet it is wholly unrelated to any physical injury to person or property and is wholly caused by plaintiffs' mental state of fear. The policy considerations underlying our decision in *Neesom v. Tri Hawk Int'l*, 985 F.2d 208 (5th Cir. 1993), dictate rejection of this claim, as well as of the inconvenience claim. As we stated in *Nesom*, "[t]o sanction the theory of recovery argued here, would open the door to thousands of plaintiffs who claim that they have suffered damages caused by fear of possible exposure to some dangerous substance or another without even proof of actual exposure to that danger." *Nesom*, 985 F.2d at 211. *See PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058, 1061 (La. 1984) (citation omitted) (internal quotation marks omitted) (tortfeasor should not be responsible for economic damages when "imposition of responsibility on the tortfeasor for such damages could create liability in an indeterminate amount for an indeterminate time to an indeterminate class"). Dismissal would also be in accordance

10

with Louisiana's policy "against compensation for purely economic loss not the result of either bodily harm to the claimant or physical injury to property in which claimant has a proprietary interest." *Great Southwest Fire Ins. Co. v. CNA Ins. Companies*, 557 So.2d 996, 970 (La. 1990). *See also Community Coffee Company, Inc. v. Tri-Parish Construction & Materials, Inc.*, 490 So.2d 1109 (La.App.1 Cir. 1986).

With the foregoing policy considerations in mind, we turn to the question of Dow's duty to the plaintiffs. In Louisiana, "[d]uty-risk analysis is still the usual method by which a court should determine which risks are compensable and which are not." *Roberts v. Benoit*, 605 So.2d 1032, 1057 (La. 1991) (on rehearing). This analysis to some extent conflates the traditional tort law elements of duty and proximate cause by asking if the scope of the defendant's duty includes the particular risk of injury and nature of the loss suffered by plaintiff. *Mart v. Hill*, 505 So.2d 1120, 1122 (La. 1987). *See also Pitre v. Opelousas General Hosp.*, 530 So.2d 1151, 1155 (La. 1988). The duty-risk approach arises out of a realization that "[r]ules of conduct are designed to protect some persons under some circumstances against some risks" and that "[p]olicy considerations determine the reach of the rule." *PPG Industries*, 447 So.2d at 1061. This duty-risk inquiry, while cast as a question of law, is nevertheless a case-by-case inquiry dependent upon the particular circumstances presented. *Roberts*,

11

605 So.2d at 1055.

In this case, we conclude that the risk that the plaintiffs would voluntarily shut off their own water supply and buy bottled water in response to news reports of this chemical spill does not fall within the scope of Dow's duty when the plaintiffs in fact faced no risk of physical harm and encountered no circumstances which would cause a reasonable person to fear such a risk. We reach this conclusion in reliance upon policy considerations articulated by the Louisiana Supreme Court and reflected in our opinion in *Nesom* (applying Louisiana law) regarding the allowable scope of recovery for economic damages in the absence of accompanying injury to person or property. *Nesom*, 985 F.2d at 211; *Southwest*, 557 So.2d at 970; *PPG Industries*, 447 So.2d at 1061-1062. "Because the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages." *PPG Industries*, 447 So.2d at 1061-1062. The plaintiffs' claims for reimbursement fail.

For these reasons, the judgment of the district court is

AFFIRMED.

12